# IN THE OREGON TAX COURT

## MARTIN et al
*v.*
## DEPARTMENT OF REVENUE
(TC 1505)

William B. Wyllie, Salem, represented plaintiffs.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiffs rendered December 2, 1981.

**CARLISLE B. ROBERTS, Judge.**

Plaintiffs appeal, pursuant to ORS 305.560(5), from a failure by the Department of Revenue over the period of a year to act on a claim for a refund of withholding taxes allegedly overpaid by plaintiff corporation, the interest accrued thereon

and penalties paid for the tax years 1971 to 1975. Under the statute, plaintiffs' appeal to the defendant is treated as having been denied. Marvin Martin is a plaintiff in the suit because he was personally liable for withholding tax payments under ORS 316.162(3).

Plaintiffs allege that the department failed to credit a payment of $1,226.10, made by the employer in October 1971, for the third quarter of 1971. Because of this, all withholding tax payments made by the plaintiffs from the first quarter of 1972 to the third quarter of 1975 were erroneously applied to a prior quarter. This allegedly resulted in the wrongful assessment of interest and penalties to plaintiffs' account and the alleged overpayments.

This case is a distressing (and confusing) saga of poor record keeping on the part of both plaintiffs and defendant. From 1965 to December 1975, the plaintiff Marvin Martin was the sole owner and manager of the plaintiff Martin's Foodliner, Inc. He personally maintained the corporate checkbook and payroll accounts. Evidence presented by the plaintiffs indicates that, prior to 1971, Martin's Foodliner, Inc., was current in and even made early payments of withholding taxes to the defendant Department of Revenue.

Mr. Martin testified on his own behalf. He stated that he often overestimated the withholding tax due for a particular quarter and paid the tax early. He testified that he was notified only once in the five-year period that the withholding tax account was overpaid. This occurred in November 1973 with respect to an overpayment made in January 1973. Mr. Martin testified that he often received notices of delinquency, which, without examination, he promptly paid, along with the interest and penalty allegedly due thereon.

At the trial, the plaintiffs presented to the court a detailed summary of all payments made by Martin's Foodliner, Inc., on its withholding tax account, from the first quarter of 1971 through the fourth quarter of 1975, and of all assessments to that account. The plaintiffs thereby attempted to demonstrate that interest and penalty were often charged when the account, in fact, contained a positive balance. Many of the alleged payments which the plaintiffs stated were made were substantiated by cancelled checks which have been retained by Mr. Martin and which were introduced into

evidence. Payments for which Mr. Martin has not submitted cancelled checks were reflected in the annual reconciliation reports of the defendant, the Department of Revenue, which also were placed in evidence. According to Mr. Martin's calculations, by January 31, 1976, the excess balance in the withholding tax account of Martin's Foodliner, Inc., was $3,408.07. Mr. Martin calculated the interest on that amount to be $1,698.68, for a total amount owed to the plaintiffs by the Department of Revenue of $5,106.75.

Mr. William E. Mauerhan, Unit Manager of the Withholding Area of the Collection Division for the Department of Revenue, testified on behalf of the defendant. He stated that he was familiar with the Martin's Foodliner, Inc., account in that he had performed an audit of it in 1974 and 1975. From computer printout annual reconciliation reports maintained by the Department of Revenue, Mr. Mauerhan made an analysis of the balance contained in the Martin's Foodliner, Inc., account. No records from the years prior to 1971 were available to Mr. Mauerhan in making his study. According to his analysis, Martin's Foodliner, Inc., was consistently one quarter delinquent in its payments. This resulted in the assessment of penalties and interest to the account for almost every quarter for 1972 to 1975. Mr. Mauerhan calculated that, in the fourth quarter of 1975, $3,714.66 was owing by Martin's Foodliner, Inc., to the Department of Revenue for the withholding purposes.

Mr. Donald E. Papke of the Accounts and Records Section, Collections Division, Department of Revenue, who also testified on behalf of the defendant, assisted Mr. Mauerhan in the preparation of the Martin's Foodliner, Inc., account analysis. He testified that original returns filed by Martin's Foodliner, Inc., could not be found in the department's records and for this reason the annual reconciliation reports (found in computerized records) were relied upon in making the analysis. He admitted that Mr. Martin was never asked for his copies of the original returns.

The plaintiffs challenged Mr. Mauerhan's and Mr. Papke's use, in their analysis of the Martin's Foodliner, Inc., account, of the data contained in the computerized annual reconciliation reports, instead of the original withholding tax returns filed by Martin's Foodliner, Inc. The court recognizes

that the original withholding tax returns for the years in question are the ideal indicators of the status of the account. The annual reconcilation reports are computer printouts and merely perpetuate any errors made in the original recording of payments. These are the errors which the plaintiffs allege were made. This is illustrated by the fact that the reconciliation reports failed to give credit for two payments this court finds were made by the plaintiffs, as evidenced by cancelled checks.

The court has been supplied with sufficient information to enable it to make an independent analysis of the Martin's Foodliner, Inc., account.

The evidence shows that at the end of the fourth quarter of 1970, plaintiff Marvin Martin was current in his payments of withholding tax.[1] On April 15, 1971, plaintiffs made an early payment by check of $1,347.46 for the first quarter of 1971.[2] Apparently this payment was not credited to plaintiffs' account by the Department of Revenue; it is not reflected in any departmental evidence, including the annual reconcilation report for 1971. On April 30, 1971, the withholding tax for the first quarter of 1971 became due in the amount of $1,045.70. The plaintiffs' balance was thereby reduced from $1,347.46 to $301.76.

On July 31, 1971, the second quarter withholding tax for 1971 became due in the amount of $1,226.10. This reduced plaintiffs' account balance to a minus $924.34. On August 2, 1971, the Department of Revenue processed a check from the plaintiffs for the amount of $1,045.70.[3] The payment of this amount was timely for the second quarter and increased plaintiffs' account balance to $121.36. On September 14, 1971, the Department of Revenue received and processed a check

---

[1] This is evidenced by cancelled checks retained by the plaintiff and plaintiffs' testimony in this regard. The defendant has no records for years prior to 1971.

[2] This payment is evidenced by a cancelled check for that amount, dated April 15, 1971, and plaintiffs' testimony, but is not reflected on the defendant's ledger sheet for 1971 or in Mr. Mauerhan's report.

[3] This payment is evidenced by a cancelled check for that amount, dated July 30, 1971, and is reflected in the department's ledger sheet for 1971. This payment is considered by the court to have been timely made for the second quarter of 1971. The official date of payment is the date of mailing. As indicated by the testimony of Mr. Mauerhan, it often takes the Department of Revenue several days to process a check after it has been received.

for $246.37.[4] The positive balance in the account was now $367.73.

The withholding tax for the third quarter of 1971 became due on October 31, 1971, in the amount of $1,300. This was timely paid by a check received by the Department of Revenue on November 1, 1971, for the amount of $1,226.10,[5] creating a positive balance in plaintiffs' account of $293.83. On January 31, 1972, the withholding tax for the fourth quarter of 1971 became due in the amount of $1,259. A check processed on February 1, 1972, for that amount, left the account balance at $293.83.[6] On March 8, 1972, the department received a payment from the plaintiffs in the amount of $333.51 for penalty and interest incorrectly charged for the second quarter of 1971.[7] Plaintiffs' new account balance was $627.34. On the same date the department received a check to be applied early to the first quarter of 1972, in the amount of $1,594.63,[8] bringing plaintiffs' account balance to $2,221.97.

On April 30, 1972, the withholding tax for the first quarter of 1972 became due in the amount of $1,244.40, thus reducing plaintiffs' account to $977.57. On June 26, 1972, the department received a check from the plaintiffs for $139.87,[9] and plaintiffs' new account balance was $1,117.44.

On July 28, 1972, the department received a check for the amount of $1,244.40, payment for the second quarter of 1972, increasing plaintiffs' balance to $2,361.84.[10] On July 31,

[4] Payment is evidenced by the Department of Revenue's ledger sheet for 1971.

[5] This fact is proved by a cancelled check dated October 28, 1971, and is reflected in the department's ledger sheet for 1971. The Department of Revenue erroneously applied this payment to the second quarter of 1971 and assessed a penalty and interest of $33.51. Although the payment of $1,226.10 was some $73.90 less than the amount due for that quarter, no penalty or interest was incurred because, at the time, there was a positive balance in the account.

[6] This payment is evidenced by a cancelled check dated January 31, 1972, and is reflected in the department's ledger sheet for 1971.

[7] Reflected in the department's ledger sheet for 1971.

[8] Evidenced by a cancelled check dated March 4, 1972, and reflected in the department's ledger sheet for 1971. This payment was erroneously credited to the third quarter of 1971 and included an interest payment of $294.63.

[9] Evidenced by a cancelled check dated June 26, 1972, and not reflected in the annual reconciliation report for 1972.

[10] Evidenced by a cancelled check dated July 20, 1972, and reflected in the annual reconciliation report for 1972.

1972, the second quarter withholding tax became due, in the amount of $1,106.30, reducing plaintiffs' account balance to $1,268.54. On September 29, 1972, the department received a payment of $211.52 from the plaintiffs for penalty and interest erroneously assessed on the first quarter of 1972.[11] This increased plaintiffs' account balance to $1,467.06.

On October 31, 1972, the withholding tax for the third quarter of 1972 became due in the amount of $1,250, reducing plaintiffs' account balance to $217.06. On November 10, 1972, the department processed a check from plaintiffs in the amount of $1,093.30, which brought plaintiffs' balance up to $1,310.36.[12] On November 24, 1972, the department processed a check from the plaintiffs in the amount of $15.95, which was partly in payment of withholding taxes and partly in payment of penalty and interest erroneously charged on the second quarter of 1972, bringing plaintiffs' account balance up to $1,326.31.[13]

On January 31, 1973, the tax for the fourth quarter of 1972 became due in the amount of $979.80. This was timely paid by a check for the same amount, received by the department on February 1, 1973.[14] Plaintiffs' account balance remained at $1,326.31.

On February 14, 1973, the department received a check for the amount of $247.79, which was paid for penalty and interest erroneously charged for the second quarter of 1972.[15] This increased plaintiffs' account balance to $1,574.10. On March 30, 1973, the department received a payment in the amount of $1,604.19, for the first quarter of 1973,[16] which

[11] Payment is reflected on the annual reconciliation report for 1972.

[12] Payment is evidenced by a cancelled check dated October 28, 1972, and is reflected in the annual reconciliation report for 1972. The Department of Revenue erroneously applied this payment to the second quarter of 1972 and assessed a penalty and interst of $247.79.

[13] Payment is reflected in the annual reconciliation report for 1972.

[14] Payment is evidenced by a cancelled check dated January 31, 1973, and is reflected in the annual reconciliation report for 1972.

[15] Payment is reflected in the annual reconciliation report for 1972.

[16] Payment is evidenced by a cancelled check dated March 27, 1973, and is reflected in the annual reconciliation report for 1973. This payment was erroneously applied to the third quarter of 1972.

included interest and penalty of $354.19. This brought plaintiffs' account balance up to $3,178.29.

On April 30, 1973, the tax for the first quarter of 1973 became due in the amount of $1,067.30. This reduced plaintiffs' account balance to $2,110.99. On May 28, 1973, the department received a payment of $136.89, increasing plaintiffs' account balance to $2,247.88.[17] On July 31, 1973, the tax for the second quarter of 1973 became due in the amount of $1,209.90, reducing plaintiffs' balance to $1,037.98.[18] On August 1, 1973, the department processed a check from the plaintiffs in the amount of $1,067.30 for the second quarter of 1973, leaving plaintiffs' account with a positive balance of $2,105.28.[19] On August 19, 1973, a check for $71.30 was processed,[20] bringing plaintiffs' account balance up to $2,176.58. At a date uncertain, another payment in the amount of $241.96 was received[21] and was charged to penalty and interest for the first quarter. This brought plaintiffs' account balance up to $2,418.54. On October 12, 1973, the department received payments of $60.45 and $1,067.30, increasing plaintiffs' account balance to $3,546.29.[22]

On October 31, 1973, the withholding tax for the third quarter of 1973 became due in the amount of $1,399.50, reducing plaintiffs account balance to $2,146.79. No withholding tax payment was made for that quarter. On January 31, 1974, the fourth quarter tax was due in the amount of $1,380.98, reducing plaintiffs' balance to $765.81. On February 21, 1974, a check for the amount of $253.23 was received by

---

[17] Payment is evidenced by a cancelled check dated May 28, 1973, but is not reflected in the annual reconciliation report for 1973.

[18] Apparently two returns were filed for this quarter; one for $71.30 and one for $1,138.60.

[19] Payment is evidenced by a cancelled check dated July 30, 1973, and is reflected in the annual reconciliation report for 1973. This payment was erroneously applied to the first quarter of 1972, with interest of $241.96 being charged.

[20] Reflected in the annual reconciliation report for 1973.

[21] Reflected in the annual reconciliation report for 1973 as having been received on November 16, 1973; the court finds it was received on October 12, 1973.

[22] The payment of $1,067.30 is evidenced by a cancelled check dated October 11, 1973, but is not reflected in the annual reconciliation report for 1973. The payment of $60.45 is reflected in Mr. Mauerhan's report.

the defendant, increasing plaintiffs' balance to $1,019.04.[23] On that same date, the plaintiffs applied a credit of $1,127.75 to the account, based on a notice received from the defendant on November 15, 1973.[24] On April 30, 1974, the withholding tax for the first quarter of 1974 became due in the amount of $1,138.40. This reduced the plaintiffs to a negative balance of $119.36.

On May 30, 1974, the Department of Revenue received a check for $14.35 from the plaintiffs.[25] At this point, plaintiffs' account had accrued one month penalty and interest, from April 30, 1974, to May 30, 1974. The rate of interest charged by the department during this period was two-thirds of one percent per month. ORS 314.400(2) (1973 Replacement Part). The penalty was five percent per month and any penalty assessed is added to the tax due. ORS 314.400(1) (1973 Replacement Part). The penalty for one month, $5.97 (.05 × $119.36), should have been added to the tax owing, for a balance of $125.33. The interest for one month on $119.36 is 80 cents. The $14.35 payment actually reduced the account to a minus $110.98.

On July 31, 1974, tax for the second quarter of 1974 became due in the amount of $1,341.61. By this time, a two-month penalty, from May 30, 1974, to July 31, 1974, had accrued in the amount of $11.10 (.10 × $110.98). This, added to plaintiffs' account balance, would bring the balance down to a negative $122.08. Interest of $1.49 also had accrued (.0067 × 2 × $110.98). The charge of $1,341.61 brought plaintiffs' balance down to a negative $1,463.69.

On September 13, 1974, the department received a check for $1,104.[26] By this time, a penalty for two months, from July 31, 1974, to September 13, 1974, had accrued, in the amount of $146.37 (.1 × $1,463.69). This amount was added to plaintiffs' account balance, bringing it down to a minus $1,610.06. Additionally, interest of $19.61 had also accrued

---

[23] Payment is evidenced by a cancelled check dated February 18, 1974, and by the annual reconciliation report for 1973.

[24] In computing the running balance of the account, plaintiffs erroneously added this amount to the balance.

[25] Reflected in the annual reconciliation report for 1973.

[26] Reflected in the annual reconciliation report for 1974.

(.0067 × 2 × $1,463.69). The payment of $1,104 improved plaintiffs' account balance to a minus $506.06.

On October 31, 1974, the tax for the third quarter of 1974 became due in the amount of $1,427.30. Once again, two months' penalty and interest had accrued, from September 13, 1974, to October 31, 1974. A penalty of $50.61 (.1 × $506.06) is added to the account balance, bringing it to minus $556.67. Interest of $6.78 had accrued (.0067 × 2 × $506.06). The tax of $1,427.30, currently assessed, brought the balance down further to minus $1,983.97.

On December 11, 1974, another payment of $1,104 was received by the Department of Revenue.[27] At this time, two more months of penalty and interest had accrued on the balance, from October 31, 1974, to December 11, 1974. A penalty of $198.40 (.1 × $1,983.97) should have been added to plaintiffs' account balance, bringing it down to minus $2,182.37. Interest of $26.59 was also accrued (.0067 × 2 × $1,983.97). The payment of $1,104 brought plaintiffs' balance to a minus $1,078.37.

On January 3, 1975, plaintiffs paid $1,427.30, the amount of tax assessed in the third quarter of 1974.[28] At this time two more months' penalty and interest had accrued, from December 11, 1974, to January 3, 1975. A penalty of $107.84 (.1 × $1,078.37) was chargeable to the account, bringing the balance to minus $1,186.21. Interest of $14.45 was also due (.0067 × 2 × $1,078.37). The payment of $1,427.30 brought plaintiffs' account balance to a surplus of $241.09.

Mr. Mauerhan testified that in early 1975 he completed an audit of the Martin's Foodliner, Inc., account. As a result of this audit, Mr. Martin was informed that he owed $3,130.36. This was paid by him on January 14, 1975, bringing plaintiffs' account balance up to $3,371.45.[29]

On January 31, 1975, the fourth quarter tax for 1974

---

[27] Reflected in the annual reconciliation report for 1974.

[28] Reflected in the annual reconciliation report for 1974.

[29] This is evidenced by a cancelled check dated January 14, 1975, and reflected in the annual reconciliation report for 1974. This amount was applied to interest and principal for the third quarter of 1973 and to interest erroneously charged on the first quarter through the third quarter of 1974.

became due in an amount of $1,571.44. This reduced plaintiffs' actual account balance to $1,800.10. On April 1, 1975, a payment for $1,749.59 was processed by the Department of Revenue, bringing plaintiffs' account balance to $3,549.60.[30] The first quarter tax for 1975 became due on April 30, 1975, in the amount of $1,373.15, reducing plaintiffs' balance to $2,176.45. On June 30, 1975, plaintiffs paid $1,528.78, bringing the balance to $3,705.23.[31]

The second and third quarter taxes for 1975 became due on July 31, 1975, and October 31, 1975, for the amounts of $1,281.09 and $2,024.56. No payment was received for those periods. On October 31, 1975, plaintiffs' true balance was a surplus of $399.58. On November 21, 1975, plaintiffs paid $1,561.12, bringing the account balance up to $1,960.70.[32] On December 8, 1975, a payment for $1,238.07 was processed by the department, and the new balance in the account was $3,198.77.[33]

The tax for the fourth quarter of 1975 became due on January 31, 1976, in the amount of $1,278.23. At this time plaintiffs' actual account balance was reduced to $1,920.54. Interest owed to the department for late payment for the first quarter through the third quarter of 1974 was $69.75, thereby reducing plaintiffs' balance to $1,850.79.

The large positive balances which frequently existed in plaintiffs' account entitled plaintiffs to repayment of interest at a rate of two-thirds of one percent per month, from November 10, 1972, to September 13, 1975, and at a rate of one-half of one percent per month from September 13, 1975, to the present. ORS 314.415(1) (1973 Replacement Part and 1975 Replacement Part). The interest does not begin to accrue until the period beginning four months after the due date of

---

[30] Payment is reflected in the annual reconciliation report for 1974. This payment included a penalty and interest of $178.10 which was applied to the fourth quarter of 1974.

[31] Payment is reflected in the annual reconciliation report for 1975. It was applied by the department to the first quarter of 1975, including interest of $155.63 wrongfully assessed in that amount.

[32] Payment is reflected in the annual reconciliation report for 1975. This payment was applied to the second quarter of 1975 and erroneously included interest and penalty of $280.03.

[33] Payment is reflected in the annual reconciliation report for 1975.

the return or the date the tax is paid, whichever is the later. ORS 314.415 (1973 Replacement Part and 1975 Replacement Part). A detailed calculation of interest owed was made by the court, utilizing the applicable statutes. The court calculates that the total interest due the plaintiffs as of October 31, 1981, was $680.66.

Although the issue has not been raised by the defendant, in order to obtain a refund for overpayment of taxes, a taxpayer must meet the requirements of ORS 314.415. That section provides that no refund shall be allowed or made after three years from the time the return was filed, or two years from the time the tax was paid, whichever is later. ORS 314.415(1)(b). Additionally, ORS 314.415(1)(d) requires that the amount of the refund, exclusive of interest thereon, may not exceed the portion of the tax paid during such period preceding the filing of the claim, or if no claim was filed, then during the period preceding the allowance of the refund during which a claim might have been filed. Since no facts were presented on this issue, it is presumed that the plaintiffs have met these requirements. Neither has the question of the statute of limitations been raised or argued by either party. (See ORS 305.425(2).)

■ The defendant has cited, in its Memorandum of Law, authority which states that the employer who deducts withholding taxes from the employee's payroll check holds the amount in trust for the State of Oregon. ORS 316.207(1). Further, alleged overpayment would ordinarily be due to an overdeduction by the employer from the employee's check and, therefore, any refund would be due to the employee, not the employer. Defendant's point is well taken. As the defendant has conceded, however, where it is shown that the alleged overpayment was due to the employer's payment to the department of more than the amount that was withheld from the employee's check, the employer is entitled to a refund. The court finds that the refund which the plaintiffs in this case seek is due to an overpayment of the second type.

The court therefore finds that the plaintiffs are entitled to a refund of $1,850.79, for withholding taxes overpaid, plus interest of $680.66 accrued thereon.

Because the record shows, without contradiction, that plaintiff Marvin Martin was treated by an agent of the

department with discourtesy, amounting to harassment, and the department is deemed to be more at fault than plaintiffs in this series of unhappy incidents, the plaintiffs are also entitled to their statutory costs and disbursements incurred in bringing this suit, including reasonable attorney fees.[34]

---

[34] ORS 305.447(1) provides for attorney fees when plaintiff prevails in certain income tax cases. This suit is a case "involving taxes upon or measured by net income in which an individual taxpayer is a party" (as required by ORS 307.447's first paragraph). Mr. Martin is a necessary party to this suit because, as officer and bookkeeper, he was personally liable for state withholding taxes under ORS 316.162(3)(b).